# 2006862

FILED-

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

NOV 20 2013

ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF IND.

| | | |
|---|---|---|
| E.T. PRODUCTS, LLC | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **CASE NO.:** |
| | ) | |
| D.E. Miller Holdings, Inc | ) | |
| DOUGLAS MILLER | ) | |
| DANA MILLER | ) | |
| TRACY MILLER | ) | |
| CATHY HUFFMAN | ) | |
| | ) | |
| Defendants. | ) | |

**2  13 CV  424**

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Comes now the Plaintiff, E.T. PRODUCTS LLC, (hereinafter, "ETP"), by and through counsel, Richard P. Long, of Rubino, Ruman, Crosmer, & Polen and for its Verified Complaint for Damages and Injunctive Relief against the Defendants, states as follows:

### NATURE OF LAWSUIT

1.      In January of 2011, Plaintiff, E.T. Products, LLC (ETP LLC) purchased the ongoing business and assets of E.T. Products, Co., Inc from DE Miller Holdings, Inc. f/k/a E.T. Products, Co., Inc., and/or its principals, Douglas Miller, Dana Miller, Tracy Miller, and Cathy Huffman, ("Defendant Sellers"). Defendant Sellers had been engaged in the business of blending, packaging, marketing, and selling chemical fuel additive products.[1]

2.      Pursuant to as "Asset Purchase Agreement" (APA), ETP LLC agreed to purchase the entire business, ("Business") including valuable proprietary information,

---

[1] Defendants also operated a second company that manufactured and sold lubricant products under the name E.T. Lubricants. On January 1, 2009, Defendants' other company, E.T. Lubricants became known as Petroleum Solutions, and was incorporated under the name E.T. Lubricants- Petroleum Solutions, Inc.

trade secrets, patents, copyrights, methods, know-how, software, technical documentation, processes, procedures, inventions, trademarks, trade names (including the name "E.T. Products" and all similar names), trade dress, logos, fictitious business names, telephone numbers, confidential information, customer lists, client lists, client files, instructions, marketing materials, all information and records relating to, current and past customers, client and employee files, contacts, suppliers, price and mailing lists.

3.      Further, as an inducement for ETP LLC to enter into the Agreement, Defendant Sellers agreed to a restrictive covenant provision in the APA and individual non-compete agreements which prohibited certain activity on the part of the Defendant Sellers. In pertinent part, those agreements provided that:

- The sellers would not use their special knowledge of the Business and their longstanding relationship with customers and suppliers to compete with the new buyers of the business;
- The sellers agreed to comply with this requirement for a period of five years;
- The sellers would not directly or indirectly, ....operate, manage, control, engage in, invest in.....or participate in any manner in, act as a consultant or advisor to, render services for........or otherwise assist any Person, other than Purchaser and its Affiliates, that engages in or owns, invests in, operates, manages or controls any venture or enterprise that directly or indirectly competes with the sold business anywhere in North America;
- The sellers would not furnish, make available or disclose to any third party or use for the benefit of the sellers or any third party, any Confidential Information, including, the business or affairs of Purchaser, any of Purchaser's Affiliates or the Business, information relating to financial statements, customer identities, potential customers, employees, suppliers, servicing methods, equipment, programs, strategies and information, analyses, profit margins or other proprietary information used by the sellers or buyers in connection with the Business;
- The sellers would not employ or recruit employees or prior employees of the buyer or otherwise seek to influence or alter any such person's relationship with buyer;
- Seller acknowledged and agreed to these covenants and in addition, agreed that in the event of a breach of said agreements, the buyer would be entitled to injunctive and other equitable relief, without the necessity of showing actual monetary damages;
- Sellers also agreed that nothing would prohibit the Buyer from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of any damages;

4.      On at least two (2) separate occasions, ETP LLC has had to seek court intervention to enjoin and restrain Defendants, their agents, and third parties, from violating restrictive covenants, non-compete agreements, violating the terms of a settlement, and tortiously interfering with its lawfully purchased business.  Despite having been forced to incur thousands and thousands of dollars in litigation fees to obtain settlement agreements in two other instances, the Defendants, acting alone and/or in conjunction with their association with Petroleum Solutions and its President, John Kuhns, have, and continue to intentionally violate the terms of the Restrictive Covenants and Non-compete agreements and have tortiously interfered with ETP, LLC's business.

5.      By filing this Complaint and Injunction, ETP LLC seeks to recover its damages and to stop a continuing pattern of breach of contract and tortious interference with its business by the former owner/sellers, who continue to directly and indirectly compete with ETP, LLC.  Despite reasonable notice requesting that all such improper conduct cease and desist, the defendants have refused and continue with such improper conduct and this litigation has followed.

6.      ETP seeks an immediate preliminary injunction against all defendants, including, but not limited to Defendant, DE Holdings, Inc, Douglas Miller, Dana Miller, Tracy Miller, and Cathy Huffman, due to their violation of the restrictive covenants and non-competition agreements. ETP is entitled to a preliminary injunction since its remedies at law are inadequate, thus causing irreparable harm on a daily basis as its customers and potential customers are lured away by the former owner of the business. ETP has provided sufficient information in its Complaint to establish a reasonable likelihood of success at trial, and, the threatened injury to ETP outweighs any harm to the Defendants.

7.      This Court has jurisdiction over the matter because complete diversity of citizenship exists between Plaintiff, ETP, LLC and the Defendants and the amount in

controversy exceeds $75,000.00 exclusive of interest and costs, as required by 28 U.S.C §1332(a).

## JURISDICTION AND VENUE

8.      Plaintiff is, and at all pertinent times, has been an Illinois limited liability company organized and existing under the laws of Illinois. The sole member of ET Products LLC is Nineteen Holding LLC, a Delaware limited liability company.

9.      All of the members of Nineteen Holding LLC are non-residents of Indiana. The members include: Thomas Blakemore, a citizen of the State of Illinois; Steve Kelley, a citizen of the State of Illinois; David J. Smith, a citizen of the State of Illinois; Thomas N. Essig, a citizen of the State of Illinois; Mike Rusnak, a citizen of the State of California; Ben GiaQuinta, a citizen of the State of Illinois; Steven P. Jenner a citizen of the State of Illinois; T.J. Blakemore, a citizen of the State of Illinois; Michael R. Blakemore, a citizen of the State of Illinois; Jennifer L. Blakemore, a citizen of the State of Illinois; Chris Blakemore, a citizen of the State of Illinois.

10.     None of the Members of this limited liability are citizens of Indiana.

11.     Defendant, DE Holdings, Inc, is a registered corporation in the State of Indiana with a principle place of business of 809 Douglas Road, Bremen, Indiana.

12.     Defendant, Douglas Miller, is a citizen of Indiana, residing at 2604 State Road 331,  Bremen, Indiana.

13.     Defendant, Dana Miller, is a citizen of Indiana, residing at 2604 State Road 331, Bremen, Indiana.

14.     Defendant, Tracy Miller, is a citizen of Indiana, residing at 2609 State Road 331, Bremen, Indiana.

15.     Defendant, Cathy Huffman, is a citizen of Indiana, residing at 1689 Dogwood Road, Bremen, Indiana

4

16.     This court has diversity jurisdiction over the parties pursuant to 28 U.S.C §1332(a)(1).

17.     Venue is proper pursuant to 28 U.S.C. §1391(b)(1)(2) as all of the defendants reside within the Northern District of Indiana and most if not all of the actions complained of were conducted in the District.

## RESTRICTIVE COVENANTS AND NON-COMPETE AGREEMENTS

18.     On January 4, 2011, Plaintiff, E.T. Products, LLC (ETP LLC), and Illinois limited liability company, purchased substantially all the assets of E.T. Products, Co., Inc from DE Miller Holdings, Inc. f/k/a E.T. Products, Co., Inc., an Indiana corporation.

19.     On or about that date, the DE Miller's principals and stockholders, Douglas Miller, Dana Miller, Tracy Miller, and Cathy Huffman, also executed "Non-Competition Agreements." (Douglas Miller signed the APA and others signed non-competes). True and accurate copies are attached hereto as Exhibits B-D.)

20.     The asset purchase was memorialized in an Asset Purchase Agreement, (APA), entitled "Asset Purchase Agreement By and Among DE Miller Holdings, Inc, F/K/A E.T. Products Co. Inc, Douglas Miller and E.T. Products LLC." (A true and accurate copy is attached hereto as Exhibit A.)

21.     The APA provided that the Sellers had been engaged in the business of blending, packaging, marketing, and selling chemical fuel additive products. (Exhibit "A"-p.1, Recital A)

22.     Pursuant to as "Asset Purchase Agreement" (APA), ETP LLC agreed to purchase "substantially all the assets of Seller. (Exhibit A, Recital C).

23.     Pursuant to Article 2 (Purchase and Sale), purchased assets included all items identified in 2.1 and 2.2 of the agreement. (Exhibit A, Article 2, 2.1-2.2.)

24.     As provided under 2.2 of the APA, purchased assets included valuable proprietary information and trade secrets, such as patents, copyrights, methods, know-how, software, technical documentation, processes, procedures, inventions, trade secrets, trademarks, trade names (including the name E.T. Products" and all similar names), trade dress, logos, fictitious business names, telephone numbers, confidential information, customer lists, client lists, client files, instructions, marketing materials, advertising records, technology, research records, data, designs, plans, drawings, manufacturing know-how and formulas, and other intellectual or proprietary rights or property of the Business. (Exhibit A, Article 2, 2.2(h))

25.     As provided under 2.2 of the APA, purchased assets included: all goodwill and going concern value. (Exhibit A, Article 2, 2.2(g))

26.     As provided under 2.2 of the APA, purchased assets included: all information files, correspondence, records, data, plans, reports, and Contracts, including any and all information and records relating to investment, insurance, current and past customers, client and employee files, contacts, suppliers, price and mailing lists, all investment, underwriting and claims files together with all usual and customary records in connection therewith, and will all accounting or other books and records of Seller in whatever media retained or stored, including computer programs, source code and object codes, databases and disks. (Exhibit A, Article 2, 2.2(l)).

27.     Pursuant to the APA, ETP, LLC agreed to pay the Defendants $4,950,000.00 as consideration for the assets transferred as well as restrictive covenants therein.

28.     As part of the Agreement, and as inducement for ETP LLC to enter into the Agreement, DE Holdings and Miller agreed to specific restrictive covenants which prohibit certain activity on the part of DE Holdings, as the Seller, and Miller, as the Stockholder under the Agreement. The relevant potions of the Agreement provide as follows:

6

7.11    Restrictive Covenants.

(a)    As an inducement to Purchaser to enter into this Agreement and consummate the transactions contemplated hereby, Seller and Stockholder (together, the "Restricted Parties", and each individually a "Restricted Party") agree and acknowledge that it is necessary that each Restricted Party undertake not to utilize such Restricted Party's special knowledge of the Business and such Restricted Party's relationship with customers and suppliers to compete with Purchaser.

(b)    Each of the Restricted Parties hereby agrees that for a period commencing on the Closing Date and ending five years from the Closing Date and so long as Purchaser has complied with its obligations under the Note and this Agreement (the "Restricted Period"), subject to Section 7.11(g), each of the Restricted Parties shall not, directly or indirectly, as agent, employee, consultant, distributor, representative, equity holder, manager, partner or in any other capacity, own (other than through the passive ownership of less than 1% of the publicly traded shares of any Person), operate, manage, control, engage in, invest in (other than through the passive ownership of less than 1% of the publicly traded shares of any Person) or participate in any manner in, act as a consultant or advisor to, render services for (alone or in association with any Person), or otherwise assist any Person, other than Purchaser and its Affiliates, that engages in or owns, invests in, operates, manages or controls any venture or enterprise that directly or indirectly engages in the Business anywhere in North America (the "Territory").

(c)    During the Restricted Period, and for the longest period of time thereafter permitted by Law, each Restricted Party shall keep secret and retain in strictest confidence, and shall not, without the prior written consent of Purchaser, furnish, make available or disclose to any third party or use for the benefit of the Restricted Parties or any third party, any Confidential Information. As used in this Section 7.11(c), "Confidential Information" shall mean any information relating to this Agreement and the transactions contemplated hereby, the business or affairs of Purchaser, any of Purchaser's Affiliates or the Business, and information relating to financial statements, customer identities, potential customers, employees, suppliers, servicing methods, equipment, programs, strategies and information, analyses, profit margins or other proprietary information used by the Restricted Parties or Purchaser in connection with the Business; provided, however, that Confidential Information shall not include any information which is in the public domain or becomes generally known through no wrongful act on the part of any of the Restricted Parties.

(d)    During the Restricted Period, no Restricted Party shall, without the prior written consent of Purchaser, directly or indirectly, as agent, employee, consultant, distributor, representative, equity holder, manager, member, partner or in any other capacity, employ or engage, or recruit or solicit for employment or engagement, any person (i) who is employed or engaged by Purchaser or any of its Affiliates (both before and

7

after the Closing Date), (ii) who was employed or engaged by Purchaser or
any of its Affiliates within six months of such contact or (iii) who was engaged
in the Business during the six months prior to the Closing Date, or otherwise
seek to influence or alter any such person's relationship with Purchaser.

(e)       ************

(f)       Each of the Restricted Parties acknowledges and agrees that
the covenants set forth in this Section 7.11 are reasonable and necessary for
the protection of Purchaser's business interests, that irreparable injury may
result to Purchaser if the Restricted Parties breach any of the terms of this
Section 7.11, and that in the event of any Restricted Party's actual breach of
any of the provisions contained in this Section 7.11, Purchaser may not have
an adequate remedy at law. Each of the Restricted Parties accordingly agrees
that in the event of any actual breach by it of any of the provisions contained
in this Section 7.11, Purchaser may obtain injunctive and other equitable
relief, without the necessity of showing actual monetary damages. Nothing
contained herein shall be construed as prohibiting Purchaser from pursuing
any other remedies available to it for such breach or threatened breach,
including the recovery of any damages.

(g)       ***************

(Exhibit A, Article 7-Certain Covenants and Agreements, 7.11).

29.     DE Miller's principals and/or stockholders, Dana Miller, Tracy Miller, and

Cathy Huffman, ("Covenantors") entered into and signed "Non-Competition Agreements."

(Exhibits B-D )

30.     Each "Covenantor" acknowledged that he or she had intimate knowledge of

the Business. (Exhibits B-D, Recital C)

31.     Each Covenantor agreed and acknowledged that it was necessary that the

covenantor undertake not to utilize Covenantor's special knowledge of the Business and

Covenantor's relationship with customers and suppliers to compete with the Company,

defined as E.T. Products LLC, and "Business" meaning the business of blending, packaging,

marketing and selling chemical fuel additive products, with its primary focus on diesel fuel

additives). (Exhibits B-D, Section 1(a)(i)).

32.     Each Covenantor agreed and acknowledged that

8

(a)(ii) for a period commencing on the date of this agreement and ending five years from the date of this Agreement, Covenantor shall not, directly or indirectly, as agent, employee, consultant, distributor, representative, equity holder, manager, partner or in any other capacity, own (other than through the passive ownership of less than 1% of the publicly traded shares of any individual, corporation, partnership, limited liability company, association, trust or other entity or organization, including a government or political subdivision or an agency or instrumentality thereof ("Person")), operate, manage, control, engage in, invest in (other than through the passive ownership of less than 1% of the publicly traded shares of any Person) or participate in any manner in, act as a consultant or advisor to, render services for (alone or in association with any Person), or otherwise assist any Person, other than the Company and its Affiliates (as defined below), that engages in or owns, invests in, operates, manages or controls any venture or enterprise that directly or indirectly engages in the Business anywhere in North America (the "Territory")...

(b)     Confidential Information:   During the Restricted Period, and for the longest period of time thereafter permitted by Law, each Restricted Party shall keep secret and retain in strictest confidence, and shall not, without the prior written consent of the Company, furnish, make available or disclose to any third party or use for the benefit of the Restricted Parties or any third party, any Confidential Information. As used in this Section 1(b), "Confidential Information" shall mean any information relating to this Agreement or the purchase agreement and the transactions contemplated hereby, the business or affairs of the Company, any of Company's Affiliates or the Business, and information relating to financial statements, customer identities, potential customers, employees, suppliers, servicing methods, equipment, programs, strategies and information, analyses, profit margins or other proprietary information used by Covenantor or the Company in connection with the Business; provided, however, that Confidential Information shall not include any information which is in the public domain or becomes generally known through no wrongful act on the part of any of the Covenantor.

(c)     Non-Solicitation.     During the Restricted Period, Covenantor shall not, without the prior written consent of the Company, directly or indirectly, as agent, employee, consultant, distributor, representative, equity holder, manager, member, partner or in any other capacity, employ or engage, or recruit or solicit for employment or engagement, any person (i) who is employed or engaged by the Company or any of its Affiliates (both before and after the date hereof), (ii) who was employed or engaged by Company or any of its Affiliates within six months of such contact or (iii) who was engaged in the Business during the six months prior to the date hereof, or otherwise seek to influence or alter any such person's relationship with the Company.

..................

9

(e)   Reasonableness of Covenants.   Covenantor acknowledges and agrees that the covenants set forth in this Section 7.11 are reasonable and necessary for the protection of the Company's business interests, that irreparable injury may result to the Company if the Covenantor breaches any of the terms of this Section 7.11, and that in the event of Covenantor's actual breach of any of the provisions contained in this Section 7.11, Company may not have an adequate remedy at law. Covenantor accordingly agrees that in the event of any actual breach by it of any of the provisions contained in this Section 7.11, Company may obtain injunctive and other equitable relief, without the necessity of showing actual monetary damages. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of any damages.

(See Exhibits B-D, Section 1(a, b, c, e).

33.   On July 9, 2013, ETP LLC paid all amounts owed on the contract in full, extinguishing any and all promissory notes.

34.   At all times, ETP LLC has complied with all obligations owed to Seller and fulfilled each of its obligations under the APA.

## DEFENDANTS' RELATIONSHIP WITH COMPETITOR, PETROLEUM SOLUTIONS

35.   Defendant Douglas Miller was the founder and creator of E.T Products and E.T. Lubricants.

36.   In January of 2009, Defendant, Douglas Miller, had publically advised his customers that the name change of "E.T. Lubricants" was changing to the name "Petroleum Solutions" would operate to separate the lubricant products line from our fuel additive products line."

37.   DE Holdings/Douglas Miller subsequently sold substantially all assets of the fuel additives company to ETP, LLC, in January of 2011.

38.   Petroleum Solutions, (E.T· Petroleum Solutions), was formerly known as E.T. Lubricants, and sold lubricant products.

39.   On December 30, 2011, Defendant sold E.T –Petroleum Solutions, Inc ("Petroleum Solutions") to John Kuhns, ("Kuhns") pursuant to written agreement.

40.    On August 23, 2012, ETP LLC representatives met with and requested that Kuhns execute a written distributorship agreement if he wanted to continue distributing ETP LLC fuel additive products.

41.    ETP LLC was willing to allow Petroleum Solutions/Kuhns to distribute ETP LLC fuel additive products if Kuhn would sign both a distributor agreement and non-disclosure agreement, due to its concern that customers would learn that ETP LLC fuel additive products were being sold to Petroleum Solutions at lower rates than offered to customers.

42.    Kuhn refused to enter into any agreements. He also refused to disclose the identity of other fuel additive suppliers he was dealing with.

43.    Upon his refusal, ETP LLC discontinued selling its products to Petroleum Solutions since it was undercutting ETP LLC's sales of the same products.

44.    On August 27, 2012, despite knowledge of a non-compete agreement signed by a former ETP LLC employee, Tom Patton, Kuhns then solicited Patton to sell comparative fuel additive products for Petroleum Solutions to ETP LLC customers in direct competition with ETP LLC.

45.    Pursuant to a written employment offer to Patton, Kuhns offered in-depth knowledge of technical specifications and pricing of ETP LLC products and compared those now and/or distributed by Petroleum Solution products were the same as ETP LLC products. (See Exhibit E)

46.    Upon information and belief, during this time and prior, Defendant Miller knew that Petroleum Solutions was competing with ETP LLC with the sale of fuel additive products and further knew that Petroleum Solutions intended to expand its sales. Despite this knowledge, Defendants continued to assist Petroleum Solutions and Kuhns in violation of multiple agreements prohibiting such conduct.

11

47.     Defendant Miller specifically acknowledged that he had been assisting the competitor during 2012 and knew that such conduct was violative of the restrictive covenants and non-competes.  (See Exhibit F – Email from Douglas Miller to Kuhn, 12/10/12).

48.     Defendants, despite full knowledge of Petroleum Solutions/Kuhns intent to further compete in the fuel additive business against ETP, LLC, continued to assist and participate in the competitor's business.

### ETP LLC V. PETROLEUM SOLUTIONS/PATTON LITIGATION 1

49.     On December 31, 2012, ETP LLC filed its "Verified Complaint for Damages and Injunctive Relief "and TRO against Petroleum Solutions and its former salesman, Tom Patton, alleging breach of non-compete and tortious interference with business relations.

50.     Part and parcel to the underlying complaint and TRO, was the claim that Patton and E.T. Lubricants, d/b/a Petroleum Solutions were actively soliciting ETP's customers in Patton's former territory and offering to undercut pricing on same or similar products.  ETP further alleged that the Defendants were misleading ETP's existing customers by informing them that his prior employer (ETP) was closing its business and/or offering inferior product.

51.     Patton admitted in deposition testimony that Kuhn's/Petroleum Solutions helped set up "Supplement Solutions," a business line for Petroleum Solutions, to sell and market fuel additives.

52.     Patton admitted in deposition testimony that he solicited ETP LLC customers while working for Petroleum Solutions.

53.     Patton further admitted in deposition testimony that he entered client contact information belonging to ETP LLC into the Petroleum Solutions computers,

including customer preferences, new orders, and comparisons of prices his company offered compared to prices he previously offered on behalf of ETP LLC.

54.     Subsequent to expedited litigation, including voluminous written discovery and depositions, the parties reached a settlement agreement.

55.     Relative to violation of the non-compete agreement and use of trade secrets, the parties entered into a settlement agreement that restricted Defendants from soliciting ETP clients in certain jurisdictions, prohibited the use of any improperly obtained "trade secret" information, and required the purging of any improper "trade secret" information from the computer systems used by PS and Patton.

56.     The parties specifically negotiated a provision in the settlement agreement to reduce and/or eliminate confusion in the marketplace and/or the intentional misleading of customers by requiring E.T. Lubricants, d/b/a Petroleum Solutions to delete "E.T." from its business name and/or any other means of identifying itself.  More precisely, the parties agreed to the following:

> 5.     Defendant, E.T. Petroleum Solutions, Inc agrees to delete "E.T." from its business name so as to minimize any confusion between it and Plaintiff company. This does not mean it will change its legal name. Change to take place by 6-1-13. The name ET Lubricants (a product) shall not be changed.

February 8, 2013, Mediation Agreement, ¶5.

57.     Despite the settlement agreement, ETP LLC learned that Petroleum Solutions/Kuhns had ignored the terms of the settlement agreement and identified the following violations: Despite the agreements, Petroleum Solutions violated the settlement agreement, as well as the final judgment order, by failing to remove "E.T." from its trade name or other identification of itself in marketing or promotional communications, including signage, causing confusion in the marketplace, to the business detriment of ETP.

As evidenced both by testimony and publicly available written documentation, Petroleum

Solutions admitted to the following:

- Solicitation of customers in the marketplace using the "E.T." identification mark, and intentionally confusing customers by associating itself with E.T. Products.
- Left marketing materials with customers while continuing to identify itself with a business name of "E.T. Lubricants, d/b/a Petroleum Solutions" and list the company website as "http://www.etlubricants.com."
- Left marketing materials left with customers which contained graphics/images displaying ETP products and product containers placed alongside E.T. Lubricant products.
- Left marketing materials with the customer contain references to products bearing an "E.T" name rather than an "E.T. Lubricant product." (reference to "E.T. Super Fleet Motor Oil");
- Left marketing materials with customers showing, in identical color schemes, ETP products and containers, alongside E.T Lubricants products.
- Left marketing materials that displayed graphics of drums containing the phrase "Use E.T. When Your Equipment Deserves The Best"
- Continued to advertise on the open market through its website (www.etlubricants.com) representing its apparent association with ETP by continued use of the E.T. name ("Specializing in quality lubricants & lubrication solutions - When quality and performance count...count on ET")
- Continued to advertise itself using the E.T. trade name on multiple products, E.T. Industrial Gear Gard Oils; E.T. 4190; E.T. Food Machinery Lubricants; E.T. Extra Heavy-Duty Air Compressor Oils; E.T. Special Heavy-Duty Transmission Oil; E.T. 41140 Synthetic Gear Oil.

## ETP LLC V. PETROLEUM SOLUTIONS/PATTON LITIGATION 2

58.     Due to this egregious breach of the settlement agreement, ETP LLC was

forced to litigate a second time and filed its "Motion to Enforce Settlement Agreement" on

August 2, 2013.

59.     ETP LLC also filed a motion for a temporary restraining order enjoining and

restraining Defendant, E.T.-Petroleum Solutions, Inc. from engaging in conduct that was in

direct violation of the settlement agreement reached by the parties at mediation as well as

constituting ongoing unfair competition and trade practices causing immediate harm to

ETP LLC.

14

60.     Part and parcel to the underlying complaint and TRO, was the claim that E.T. Lubricants, d/b/a Petroleum Solutions was now in the business of manufacturing and selling fuel additive products when previously it had only sold lubricant products.  In the original injunction complaint, ETP alleged that E.T. Lubricants d/b/a Petroleum Solutions hired ETP's former salesman (Tom Patton) so as to gain access to sensitive client contact and sales information to further its sales and marketing of its own fuel additives, in direct competition with ETP.

61.     Faced with overwhelming evidence that Petroleum Solutions was actively misrepresenting itself and using deceptive advertising to cause customers to believe that Petroleum Solutions was the same as ETP and/or was the same as its prior owners, it agreed to discontinue use of the E.T. name in its entirety, lubricant or additives.

62.     This pattern of conduct and breaches of restrictive covenant and non-competes, continues however as the Defendants, despite knowledge of the foregoing, continue to knowingly and intentionally attempt to disrupt and damage ETP LLC's business.

## COUNT I

### (Breach of Restrictive Covenants and Non-Compete Agreements)

Comes now the Plaintiff, E.T. PRODUCTS LLC, (hereinafter, "ETP LLC"), and for Count I of its Complaint against the Defendants, states as follows:

1-62.   Plaintiff re-alleges paragraphs 1-63 as if fully set forth herein.

63.     Despite the contractual obligations prohibiting any conduct which would violate Section 7.11 of the Restrictive Covenants of the APA, and/or the non-compete agreements, defendants breached said obligations by competing with ETP LLC by and through his/their association and/or affiliation with a direct competitor, Petroleum Solutions.

15

64.     ETP LLC is informed and believes, and thereupon alleges, Defendants have intimate knowledge of ETP LLC's Business, including its methods, know-how, processes, procedures, inventions, technology, research records, data, designs, plans, drawings, manufacturing know-how and formulas, and other intellectual or proprietary rights or property of the Business, and have provided such information to ETP LLC's competition, including, but not limited to Petroleum Solutions, so as to allow it and its agents to manufacture and sell competing products.

65.     ETP LLC is informed and believes, and thereupon alleges Defendants knowingly and willingly have assisted Petroleum Solutions and/or its agent, John Kuhns, in the business of blending, packaging, marketing and/or selling of chemical fuel additive products that have been designed to directly compete with ETP LLC products.

66.     ETP LLC is informed and believes, and thereupon alleges, that in violation and breach of the aforesaid restrictive covenants and non-compete agreements, Defendants knowingly and willingly disseminated information, formulations and technology to Petroleum Solutions and/or its agent, John Kuhns, to enable said competitor to manufacture and market fuel additive products that directly compete with ETP LLC.

67.     ETP LLC is informed and believes, and thereupon alleges, that Defendants have intimate knowledge of ETP LLC's Business, including its customer lists, client lists, client files, client instructions, mailing lists, marketing materials, and improperly copied and kept such records and gave them to third parties.

68.     ETP LLC is informed and believes, and thereupon alleges, that Defendants have intimate knowledge of ETP LLC's purchased Business, including information and records relating to cost and profit margins, overhead, investment, loan payments, insurance, all accounting or other books and records of Seller, and have provided such knowledge, information, and/or documents to ETP LLC's competition, including, but not

16

limited to Petroleum Solutions, so as to allow it and its agents to sell competing fuel additive products at lower prices, thus undercutting ETP, LLC's business.

69.     ETP LLC is informed and believes, and thereupon alleges, that Defendants have improperly entered into contractual lease agreements with a direct competitor of ETP LLC and have leased property immediately adjacent to its place of business at more favorable than market rates for such property. Further, Defendants have given the competitor an option to buy the property.

70.     ETP LLC is informed and believes, and thereupon alleges, that Defendants sold its other business to a third-party without restriction, knowing that said third-party intended to sell fuel additive products to directly compete with ETP LLC.

71.     Defendants have improperly loaned money to a competitor, pursuant to a stock/share sales agreement, and one or more promissory notes, and Defendants have provided loan terms to a competitor that are more favorable than the terms offered to ETP LLC.

72.     Defendants have improperly retained rights, pursuant to the stock/share agreement, that allows for control and management of a company that directly competes with ETP LLC.

73.     Defendants have improperly retained rights, pursuant to the stock/share agreement, that allows it to have first right of refusal to re-purchase the competing business in the event of default on payments.

74.     Defendants improperly retained office space and equipment within the offices and warehouse of a direct competitor's facility in violation of the restrictive covenant and non-compete agreements.

75.     Defendant, Douglas Miller, has willingly participated and assisted in the loading and unloading of product at a direct competitor's warehouse.

17

76.     Defendants have caused third parties to solicit ETP LLC's current and/or former employees to work for a competitor of ETP LLC.

77.     Defendants have caused customers and the general public to believe that Defendant, Douglas Miller, is and remains associated with Petroleum Solutions adding perceived good will to a competitor.

78.     Defendants actively assisted other parties in soliciting ETP LLC 's existing customers who were under contract with ETP LLC to purchase product on a seasonal basis.

79.     Defendants are aware of these contractual relationships, but engaged in intentional conduct designed to induce breach or disruption of certain of the contractual relationships between ETP LLC and its respective customers.

80.     An actual breach or disruption of the contractual relationships did in fact occur, resulting in damage to ETP LLC.

81.     ETP has built up goodwill and reputation for its business and is entitled to receive the benefits of its labors.

82.     Defendants have misappropriated ETP LLC's trade secrets to sell same or similar product at lower, predatory pricing to ETP LLC's customers.

83.     Defendants conduct is interfering with ETP LLC's contractual and prospective relationships with its customers.

84.     Defendant's conduct is willful and is for the sole purpose of causing economic injury to ETP LLC.

85.     There is no justification for Defendants' conduct.

86.     As a result of Defendants' conduct, ETP has suffered damages.

87.     Each of the aforementioned acts constitute breach of the restrictive covenant provisions of the APA and the Non-Compete agreements entered into by all Defendants.

18

88.    As a result of such breaches, ETP LLC has been and will continue to be damaged by loss of customers, potential customers, loss of revenues, loss of profits, harm or loss of its goodwill, and loss of value to its purchased business.

89.    The conduct of the Defendants demonstrate a pattern of conduct, that, in association with other parties, namely, Petroleum Solutions and Tom Patton, have caused ETP LLC to expend unnecessary and significant costs and attorney's fees to enforce the rights that it paid significant consideration for.

90.    Due to the prior and continuing breaches, it is highly likely that the breaches will continue, and as a result, ETP LLC is threatened with irreparable harm through the future loss of customers, revenues, profits and damage to its goodwill, and loss of business valuation.

91.    The continued breaches by the Defendants of the Restrictive Covenants and Non-Compete Agreements threatens to cause ETP LLC future injuries in an amount that cannot be ascertained and for which ETP LLC cannot adequately be compensated in monetary damages, and thus it seeks injunctive relief.

92.    ETP LLC at all times complied with its contractual obligations.

93.    ETP LLC has no adequate remedy at law and is entitled to a Preliminary and Final Injunction for such violations.

94.    The threatened harm to ETP LLC, if such Injunction is not granted, outweighs the risk of harm to the Defendants if such Injunction is granted.

95.    The granting of such Injunction will not violate public policy.

96.    The Non-Compete Agreement entitles ETP LLC to obtain, among other things, injunctive relief, damages, and/or attorneys' fees in connection with the Defendant's breach of the Restrictive Covenant and Non-Compete Agreements.

19

97.     Defendant's wrongful violations have, and, unless restrained by this

Honorable Court, will continue to cause irreparable injury to ETP LLC's business, for which

there is no adequate remedy of law.

98.     Defendant's wrongful violations believed to have already caused monetary

loss to the Plaintiff in excess of Five-Hundred Thousand Dollars ($500,000.00).

WHEREFORE, Plaintiff, E.T. PRODUCTS LLC prays for relief as follows:

1)      Specific performance, including a preliminary injunction, pending
        final adjudication and permanent relief, restraining Defendant(s) from
        disclosing, divulging, or communicating any Confidential Information.

2)      A preliminary injunction, pending final adjudication and permanent
        relief, restraining the Defendants, and any person or entity in active
        concert or participation with them, from: a) using their special
        knowledge of the Business and their longstanding relationship with
        customers and suppliers to compete with the buyers, ETP LLC; b)
        failing to comply with the five year requirement; c) directly or
        indirectly, ....operate, manage, control, engage in, invest in.....or
        participate in any manner in, act as a consultant or advisor to, render
        services for........or otherwise assist any Person, other than Purchaser
        (ETP LLC) and its Affiliates, that engages in or owns, invests in,
        operates, manages or controls any venture or enterprise that directly
        or indirectly competes with the sold business anywhere in North
        America, d) furnishing, making available or disclosing to any third
        party or use for the benefit of the sellers or any third party, any
        Confidential Information, including, the business or affairs of
        Purchaser, any of Purchaser's Affiliates or the Business, information
        relating to financial statements, customer identities, potential
        customers, employees, suppliers, servicing methods, equipment,
        programs, strategies and information, analyses, profit margins or
        other proprietary information used by the sellers or buyers in
        connection with the Business; d) employing or recruiting employees or
        prior employees of the buyer or otherwise seek to influence or alter
        any such person's relationship with buyer;

3)      Injunctive relief without the necessity of posting bond or other
        security.

4)      Award treble and/or punitive damages and attorney fees as provided
        under Indiana law.

5)      Award damages in the amount of Five-Hundred Thousand Dollars
        ($500,000.00) and/or for such additional amounts proven at trial for

past business losses, lost profits, damage to reputation, business devaluation and future losses to ETP LLC's business.

6)   An order requiring the Defendants to immediately return all ETP LLC lawfully purchased property, including, but not limited to written or electronic formats related to

a) billing amounts for customers;
b) sales practices;
c) its customers' policies and procedures;
d) its customers' preferences;
e) customer lists;
f) contact lists;
g) its knowledge of the specialized needs and requirements of customers;
h) its knowledge of how to meet the needs and requirements of customers;
i) telephone lists;
j) internal forms; and
k) database information.

7)   A permanent injunction, running from the date of the final judicial decree or order in this matter, restraining Defendant(s) from engaging in any of the aforementioned activities.

8)   Costs, and any other relief this Honorable Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. Pro. 38, a trial by jury is hereby demanded.

## VERIFICATION

I affirm, under the penalty of perjury, that the foregoing representations are true and correct.

Thomas Blakemore, President of
E.T. Products LLC.

21

Respectfully submitted

E.T. Products, LLC

BY:

Richard P. Long #19462-45
(Attorney for Plaintiff)

Rubino, Ruman, Crosmer, & Polen
275 Joliet Street, Suite 330
Dyer, IN 46311
Phone: 219-322-8222
Fax: 219-322-6675

## CERTIFICATE OF SERVICE

I hereby certify that on the $\underline{20}$ day of $\underline{November}$, 2013, service of a true and complete copy of the attached pleadings and papers was made upon all counsel of record by depositing same in the United States mail with sufficient first class postage affixed.

Richard P. Long #19462-45

22